

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00247-CR

_____

JOSHUA BABIN, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1513813D

_____

Before Gabriel, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Appellant Joshua Babin appeals from his convictions for four counts of aggravated sexual assault of a child (Elaine) and for one count of indecency with Elaine, all occurring on or about July 4, 2017.[1] He argues that he was denied the right to introduce evidence of Elaine's prior allegations that she had been inappropriately touched by other children at her daycare and school. He also contends that the forensic interviewer was erroneously allowed to testify to Elaine's outcry regarding the July 4, 2017 sexual abuse because Elaine's mother was the first adult Elaine had told. We conclude that Babin did not preserve error regarding Elaine's prior allegations and that Babin was not harmed by the admission of the forensic interviewer's testimony; thus, Babin is not entitled to appellate relief based on these complaints.

Babin also appeals from his concurrent forty-year and twenty-year sentences and argues that based on his attorney's affidavit recounting a post-verdict interview with three jurors, the jury wrongly considered conduct that it previously had found Babin not guilty of when assessing his sentence. Because the affidavit regarding the jury's deliberative process is not as categorical as Babin argues, we conclude the trial court did not abuse its discretion by denying Babin's motion for new trial based on jury misconduct.

---

[1]To protect the minor victim's identity, we refer to her and her family members (other than Babin) by fictitious names. *See* Tex. R. App. P. 9.8 cmt., 9.10; Tex. App. (Fort Worth) Loc. R. 7.

# I. BACKGROUND

## A. THE INITIAL OUTCRY

Babin and Angela were married and had three children: Tina and twins Elaine and Hope. They divorced when the twins were approximately eighteen months old; Babin was given "extended standard" visitation rights to the three girls.

When Elaine was six and after she had returned with her sisters from an eleven-day visitation with Babin over the July 4, 2017 holiday, Elaine told Angela that Babin had been "touching her private parts . . . under her panties." Elaine then specified that Babin had taken his penis out of his pants and had "press[ed] it against her pants or bottom and that hurt really bad." Elaine told Angela that Babin had also licked his fingers and touched "her privates" with his fingers. Angela contacted the Department of Family and Protective Services and also spoke with law enforcement. Officers referred Elaine for a forensic interview with Jessica Parada.

Elaine told Parada that Babin began sexually abusing her when she was five, which continued until her outcry to Angela. She told Parada about several acts of sexual abuse:

> She talked about [Babin] grabbing his private part, which [Parada] clarified, and [Elaine] said that it was used to pee. She talked about her bottom, which she said was used to poop, and she talked about her front part which she said it was used to pee. She talks about him putting his private part . . . in her bottom in the hole. She talks about him putting his front part in her front part on the line. She talks about him putting his hand on her private part, talks about him putting his finger in her private part, and talks about him putting his finger in her bottom.

3

. . . .

. . . She . . . talks about him saying - - she says he said get it.

She talks about other things like it hurting. And [Parada] asked how come it was hurting, and she says, because he kept pushing. . . . [B]ecause she said he was holding his private area and pushing it.

Parada stated that Elaine had difficulty differentiating between when each act occurred—when she was five or when she was six. Elaine told Parada that her sisters were in the room during the last act of sexual abuse in July 2017 but that they did not see what happened because she and Babin were "under the covers."

Angela also took her to a hospital where a sexual-assault nurse examiner, Stacy Henley, performed a medical exam on Elaine. Elaine told Henley that Babin had "touched [her] private area" and that he told her to "get it." Angela stated that when she had sex with Babin, he said "get it" to her.

Elaine also told Henley that Babin put his finger and "[his] thing where he pees from" inside her private area. She said that he also put his finger and his sexual organ inside her anus. Henley saw no injuries or damage to Elaine's genital area during the physical exam; however, Henley's diagnosis was that Elaine had been sexually abused based on "the history that [Elaine] gave [Henley]."

## B. TRIAL

Babin was indicted with four counts of intentional or knowing aggravated sexual assault, occurring when Elaine was five (on or about April 1, 2017) by:

1. causing his sexual organ to contact Elaine's sexual organ;

4

2.      penetrating Elaine's sexual organ with his finger;

3.      causing his sexual organ to contact Elaine's anus; and

4.      penetrating Elaine's anus with his finger.

*See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (iv). Babin was indicted with four counts of intentional or knowing aggravated sexual assault, occurring when Elaine was six (on or about July 4, 2017) by:

1.      causing his sexual organ to contact Elaine's sexual organ;

2.      penetrating Elaine's sexual organ with his finger;

3.      causing his sexual organ to contact Elaine's anus; and

4.      penetrating Elaine's anus with his finger.

*See id.* Babin was indicted with two similar counts of indecency with a child, one occurring on April 1, 2017, and the other on July 4, 2017: Babin "intentionally, with the intent to arouse or gratify the sexual desire of any person, engage[d] in sexual contact by touching . . . any part of Elaine's genitals." *See id.* § 21.11(a)(1). Finally, Babin was indicted with continuous sexual abuse of a child (CSA) based on the acts of sexual abuse alleged in the aggravated-sexual-assault and indecency counts. *See id.* § 21.02(b), (c)(2), (c)(4).

At trial, Elaine testified that she did not remember any April acts of sexual abuse and that Babin had abused her only once in July 2017 when she was six. She testified that while she and Babin were underneath the covers on a bed, Babin had pulled her underwear down and had touched her "back private part" with his hand

5

and with his sexual organ. He had also penetrated her anus with his sexual organ. Elaine did not remember if Babin had penetrated her sexual organ with his sexual organ or if his hand had touched her sexual organ, but she did testify that his sexual organ had touched her sexual organ. She also specified that when Babin had touched her anus with his hand, he spit in his hand first. Her two sisters, Hope and Tina, had been watching a movie in the same room at the time.

Tina, who was eleven in July 2017, testified that she saw Babin asleep in bed with an awake Elaine "under the covers." Although Tina could not see Babin's hands, she could see the outline of his hands under the covers around Elaine's hips, "[o]n the side and the back," "[r]ight under [Elaine's] bottom." Tina, feeling "[u]neasy" and "suspicious," got Elaine out of the bed and took her to Tina's room so Elaine could sleep on Tina's floor. Hope also slept on Tina's floor. Babin later came into Tina's room and lay on the floor behind Elaine.

Babin testified and denied ever sexually abusing Elaine, characterizing Elaine as "seriously confused" and positing that Tina's "perception is just off." According to Babin, he would only "caress" and "cuddle" Elaine when putting her to bed at night. Babin also testified that during the July 2017 visitation, he caught Elaine and her "very good friend[]," eight-year-old Carl, "spooning each other in front of [Babin's] recliner under a blanket." When Babin "whipped" the blanket off, he saw that Carl's hand was down the front of Elaine's underwear and that Elaine's shirt was "up around her chest area." Babin grabbed Carl away from Elaine, threw Carl into the recliner, and

6

ordered Elaine to go to her room. Babin then found Carl's mother, who was in the kitchen, and screamed at her, forcing her and Carl to leave his home. Tina also testified to the incident with Carl and his mother and remembered Babin's anger.

Babin also recounted that Angela had been sending sexually suggestive texts to him in the days before Elaine's outcry and had become upset when Babin would not break up with his girlfriend. Babin believed Angela "blew [the alleged sexual abuse of Elaine] out of proportion" based on her jealousy. Although Babin "believe[d] somebody's been abusing [Elaine]," he testified it was not him.

The jury found Babin not guilty of CSA, the April aggravated sexual assaults, and the April indecency with a child. The jury found Babin guilty of the July aggravated sexual assaults and the July indecency with a child. Because Elaine was not younger than six at the time of the July aggravated-sexual-assault offenses, the jury found the punishment-enhancement allegation not true. *See id.* § 22.021(f)(1).

At punishment, the State "reoffer[ed] all of the evidence offered during the guilt/innocence phase of the trial." Babin's father testified to Babin's past problems with marijuana and alcohol but stated that Babin was "an incredible father." The jury assessed Babin's sentence at forty years' confinement for each aggravated sexual assault and at twenty years' confinement for indecency. In the resulting judgments, the trial court ordered the sentences to run concurrently. *See id.* § 3.03(b)(2)(A).

## C. POST-JUDGMENT

After the jury returned the punishment verdicts, Babin's attorneys, the prosecutors, and the trial judge met with three of the jurors at the jurors' request. The foreman "expressed that he believed the [CSA] charge was likely true, but that the evidence ['unfortunately'] was simply not quite strong enough to convict on that count." The foreman continued that had Babin "admitted the acts on or about July 4th, 2017 and accepted responsibility instead of just denying everything, 'it would have significantly reduced [the foreman's] suspicion of [CSA]' and that [Babin's] punishment would have been much lower." The other two jurors "nodded their heads in agreement." One of Babin's attorneys made notes of the conversation immediately after it ended and included the information in an affidavit in support of Babin's motion for new trial. In the motion, Babin argued that he was entitled to a new punishment trial based on jury misconduct—considering the acquitted CSA offense in assessing punishment.

Babin also argued in the motion that he was entitled to a new trial on the July offenses because he was not allowed to introduce evidence that Elaine previously had made outcries of sexual abuse three times at her daycare and once at school. This evidence, Babin contended, would have shown Elaine's bias or motive to lie.

In an "OFFER OF PROOF" filed the same day as the new-trial motion, Babin asserted that the following evidence should have been admitted at trial:

1. [Elaine] made allegations that 3 separate children touched her inappropriately at the daycare she attended. This daycare was owned and operated by her grandmother.

2. [Elaine] was aware that persons accused of touching her inappropriately would get in trouble for doing so and that her accusations of such conduct could get them in trouble. Specifically, [Elaine] informed prosecutors that she notified school personnel that a boy touched her at school and that boy got in trouble for his behavior.

3. This evidence would have coincided with the fact that [Babin] had threatened a friend of [Elaine's] within a week of her outcry and was possibly mad or afraid of him[,] presenting a possible motive to make a false accusation.

Babin stated that because he was denied the right to introduce the evidence in the first paragraph, it was "impossible" to introduce the evidence in the second paragraph. Babin asserted that "the sheer number of purported [prior] victimizations" would have made Elaine's testimony against Babin "less reliable."

At the hearing on Babin's new-trial motion, Babin's attorney argued that the foreman "admitted he was contemplating these counts of acquittal during his [punishment] deliberation." The prosecutor disputed Babin's attorney's interpretation of the foreman's remarks, positing an alternate reading of the foreman's statements:

[The foreman] talked about that he had wanted [Babin] to show more remorse or admit more about his conduct in guilt/innocence. What he was referring to, not the other [April] acts [of sexual abuse and CSA], but that [Babin] blamed - - was blaming everything on the mother. Not taking anything into account about [Elaine]. Not anything out about these [April] acts [and CSA] that they found him not guilty of. I mean, the [foreman] told [the prosecutor that she] didn't prove that.

9

The other bases for Babin's new-trial motion and offer of proof were not discussed at the hearing. The trial court stated that it would rule on the new-trial motion "at a later date"; however, the motion was deemed denied. *See* Tex. R. App. P. 21.8(c).

## II. PRIOR ALLEGATIONS OF SEXUAL ABUSE

Babin contends that the trial court erred by refusing to allow him "to bring in evidence pertaining to [Babin's] claims that [Elaine] was touched inappropriately multiple times at her daycare" and regarding "another outcry" that the State disclosed during discovery. The "another outcry" apparently refers to the incident Babin raised in his post-judgment offer of proof—Elaine told "school personnel" that a boy had touched her at school and the boy got in trouble.[2] We review the exclusion of evidence regarding a victim's prior sexual-abuse accusations under an abuse-of-discretion standard. *See Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009); *Martin v. State*, 173 S.W.3d 463, 467–68 (Tex. Crim. App. 2005).

During Babin's testimony, the State cross-examined him about the incident with Carl and Elaine and questioned why Babin did not seek medical attention for Elaine after seeing Carl's hand on Elaine's sexual organ. Outside the presence of the jury, Babin's counsel asserted that the State's cross-examination had opened the door to evidence of "additional sexual acts with other little boys" at Elaine's daycare and school, Rule 412 notwithstanding. *See* Tex. R. Evid. 412(a) (prohibiting admission of

---

[2]As the State points out, the record does not include the State's disclosures or discovery produced to Babin.

evidence of sexual-assault victim's past sexual behavior).  In an offer of proof, Babin

testified to inappropriate touching at Elaine's daycare:

> Q.　Were you . . . ever made aware of [Elaine] being inappropriately touched at some other point in her life?
>
> A.　I have been.
>
> . . . .
>
> Q.　. . .[L]ike a couple of years [ago]?
>
> A.　Yes, sir.
>
> Q.　. . . What were you told or how were you made aware of inappropriate touching . . . of [Elaine]?
>
> A.　There was a few times that I would pick her up from daycare and one of the daycare workers, typically the manager . . ., would pull me in her office and tell me a problem she had with [Elaine] at daycare that day.
>
> Q.　Okay.  Do you know any specific, and the legal term is manner and means, but what are we talking about actually happening?
>
> A.　Some inappropriate touching of some sort or another.
>
> Q.　Of [Elaine] being touched inappropriately or [Elaine] touching someone else inappropriately?
>
> A.　Of [Elaine] being touched inappropriately.
>
> Q.　Okay.  Would it have been in her private area or her anal area that you were made aware of?
>
> A.　I honestly never received those kind of details.
>
> Q.　Okay.  My final question is, when you're being informed by personnel at the daycare, were you ever told or was it part of the

protocol that, hey, the authorities needs to be discussed because inappropriate touching had occurred?

A. No, I was a parent and they talked to me and they talked to the other child's parent as well. And I think it was expected that the parents would handle it appropriately.

Q. Okay. But to handle it in-house because it was kids on kids, correct?

A. Correct, yes, sir.

Babin's counsel argued the evidence was admissible to explain why Babin did not contact the authorities when he saw Carl and Elaine by the recliner in July 2017. The trial court excluded Babin's proffered testimony.

Babin failed to preserve any error arising from the exclusion of evidence regarding an incident at Elaine's school. Babin proffered no evidence at trial of an act of sexual abuse occurring at Elaine's school.[3] By not informing the trial court of the substance of this incident, the details of which were not apparent, Babin did not preserve this claim. *See* Tex. R. Evid. 103(a)(2). And Babin's counsel's statement to the trial court that the proffered evidence was "a discussion of additional sexual acts with other little boys . . . in the [State's] Brady disclosure" was not a reasonably specific summary for preservation purposes. *See Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998) (per curiam). Although Babin attempted to offer more specific

---

[3]Henley testified that Elaine mentioned "some issues she was having at school" during the sexual-assault exam; however, Henley did not document anything further about the comment, which she would have if the issues had involved sexual abuse.

proof of this incident in a post-trial offer filed twenty-five days after his sentences were imposed in open court, this offer was untimely. *See Solley v. State*, No. 14-07-00803-CR, 2009 WL 396268, at \*3 (Tex. App.—Houston [14th Dist.] Feb. 19, 2009, pet. ref'd) (mem. op., not designated for publication). Accordingly, there is nothing for this court to review. *See, e.g.*, *Lavoie v. State*, No. 02-14-00333-CR, 2015 WL 5108854, at \*5 (Tex. App.—Fort Worth Aug. 28, 2015, pet. ref'd) (mem. op., not designated for publication) ("We are not at liberty to judge the propriety or the potential harm of the trial court's evidentiary ruling without knowing the content of the potential testimony.").

Regarding the daycare evidence, Babin now argues that it should have been admitted because it suggested "the repetition of highly unlikely events," rendering Elaine's similar allegations against Babin implausible and likely false—the doctrine of chances. *See De La Paz v. State*, 279 S.W.3d 336, 347–48 (Tex. Crim. App. 2009). At trial, Babin did not argue the doctrine of chances as a basis to admit the daycare evidence; rather, he asserted that the proffered evidence related to Babin's (not Elaine's) credibility regarding his testimony about Carl and Elaine, implicitly explaining why Babin did not call the police. *See generally Hammer*, 296 S.W.3d at 565–66 (recognizing different theories of admissibility permitting use of prior false accusations when offered to show witness's bias or motive). Although Babin argued in his new-trial motion that the daycare incidents were admissible because they related to Elaine's motive or bias, *see* Tex. R. Evid. 412(b)(2)(C), an argument raised in a

13

motion for new trial is untimely for purposes of informing the trial court of an asserted admissibility ground. *See Torres v. State*, 424 S.W.3d 245, 256 (Tex. App.— Houston [14th Dist.] 2014, pet. ref'd); *see also* Tex. R. App. P. 33.1(a)(1)(A).

Babin also seems to assert on appeal that the exclusion of the daycare evidence violated his constitutional confrontation rights. But he did not raise this argument until he moved for a directed verdict after the State had rested its case and after Elaine had testified. This was too late to preserve a confrontation argument for our review. *See Torres*, 424 S.W.3d at 255–56.

Babin relies on admissibility arguments on appeal that were not timely raised to the trial court and, therefore, failed to preserve any error arising from the exclusion of the evidence.[4] We overrule Babin's second issue.

### III. OUTCRY TESTIMONY

In his third issue, Babin argues that the trial court erred by allowing the forensic interviewer, Parada, to testify about Elaine's statements to her because Angela was the only appropriate outcry witness, rendering Parada's testimony

---

[4]Even if Babin had preserved his arguments, we would conclude that he was not harmed by the exclusion. *See, e.g.*, *Ramos Pabon v. State*, No. 02-18-00517-CR, 2019 WL 4122611, at *5 (Tex. App.—Fort Worth Aug. 29, 2019, no pet.) (mem. op., not designated for publication). The jury heard that shortly before Elaine's outcry against Babin, Babin saw Carl with his hand inside Elaine's underwear, causing Babin to yell at Carl and his mother and to forcibly eject Elaine's "very good friend[]" from the house. Babin also suggested during his testimony that Angela "blew [Elaine's accusations against him] out of proportion" after Babin romantically rejected her. This evidence put the veracity of Elaine's outcry at issue, but the jury rejected this theory, at least as to the July allegations.

inadmissible hearsay. Before trial, the State notified Babin that it intended to call Angela and Parada as outcry witnesses. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(1). Babin objected to Parada's testifying as an outcry witness because Angela had been the first adult Elaine told about the sexual abuse. *See id.* art. 38.072, § 2(a)(3). The State argued that Parada was an appropriate outcry witness because Elaine specifically described the sexual abuse to Parada after only generally alluding to the abuse with Angela. The trial court overruled Babin's objection and allowed Parada to testify. Parada testified that Elaine stated Babin had penetrated her anus with his sexual organ and with his finger, penetrated her sexual organ with his finger, and touched her sexual organ with his sexual organ and with his hand.

Article 38.072 allows the admission of hearsay outcry statements if certain requirements are met. *Id.* art. 38.072, § 2. One of these requirements is that the designated outcry witness must be the first adult that the victim told about the abuse. *Id.* art. 38.072, § 2(a)(3). To be considered the first outcry, the victim's statements must be more than a "general allusion of sexual abuse" but, rather, must describe the specific event in some "discernible manner." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990); *see also West v. State*, 121 S.W.3d 95, 104 (Tex. App.—Fort Worth 2003, pet. ref'd) ("[A]n outcry witness is not person-specific, but event-specific."). With child victims, this determination is "a difficult one that demands close scrutiny by the trial judge," which we review for a clear abuse of discretion. *Garcia*, 792 S.W.2d at 91–92.

15

But even if the trial court abused its discretion here by allowing Parada to testify, a holding we do not expressly make, we conclude that any error would have to be disregarded as harmless. *See* Tex. R. App. P. 44.2(b); *West*, 121 S.W.3d at 104. In reviewing nonconstitutional error, we must determine if it affects a substantial right and is, therefore, reversible. *See* Tex. R. App. P. 44.2(b). A substantial right is not affected by the erroneous admission of evidence if the same evidence is admitted elsewhere without objection. *See Crocker v. State*, 573 S.W.2d 190, 201 (Tex. Crim. App. [Panel Op.] 1978); *Denton v. State*, No. 2-05-044-CR, 2006 WL 2076534, at *8 (Tex. App.—Fort Worth July 27, 2006, pet. ref'd) (mem. op., not designated for publication) (citing *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)).

Elaine testified to some of the July acts of sexual abuse, essentially describing Babin's pulling down her underwear, touching her anus with his hand (after spitting on his hand), touching her anus with his sexual organ, touching her sexual organ with his sexual organ, and penetrating her anus with his sexual organ. Angela testified that Elaine said Babin had touched her "private parts" and pressed his sexual organ against her "bottom," hurting her. Elaine also told Angela that Babin licked his fingers before touching her sexual organ. Henley testified to the details of Elaine's outcry during the sexual-assault exam and testified to most of the same allegations that Elaine had told Parada: Babin had touched Elaine's sexual organ and penetrated her anus with his sexual organ and with his finger.

16

In short, the outcry statements included in Parada's testimony were also included in Elaine's, Angela's, or Henley's testimony, to which Babin did not object. Their testimony established the essential elements of the July indecency and aggravated sexual assaults apart from Parada's testimony. *See Lamerand v. State*, 540 S.W.3d 252, 259–60 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd); *Bersosa v. State*, No. 05-06-00129-CR, 2007 WL 137367, at *2–3 (Tex. App.—Dallas Jan. 22, 2007, no pet.) (not designated for publication). As such, Babin's substantial rights were not affected by the admission of Parada's testimony. *See Lamerand*, 540 S.W.3d at 260; *Bersosa*, 2007 WL 137367, at *2–3; *Denton*, 2006 WL 2076534, at *8–9; *Duncan*, 95 S.W.3d at 672. We disregard any error and overrule issue three.

## IV. JURY MISCONDUCT AT PUNISHMENT

Babin asserts that he is entitled to a new punishment trial based on the foreman's post-verdict assertion that Babin's failure to take responsibility, thereby reinforcing the foreman's "suspicion" that CSA had occurred, resulted in a longer assessed sentence. Babin contends that this statement shows that three jurors considered allegations they had previously found Babin not guilty of, which constituted jury misconduct and rendered his punishment trial unfair. *See* Tex. R. App. P. 21.3(g).

We review the trial court's deemed denial of Babin's new-trial motion based on jury misconduct for an abuse of discretion. *See Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017); *Mallet v. State*, 9 S.W.3d 856, 868 (Tex. App.—Fort Worth

17

2000, no pet.). Our review is deferential and requires us to view the evidence in the light most favorable to the trial court's denial. *See Burch*, 541 S.W.3d at 820. We may not substitute our own judgment for the trial court's and must uphold the ruling if it could have been based on a reasonable view of the evidence. *See id.* Any credibility issues are the sole province of the trial court. *See Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). And "[w]here there is conflicting evidence on an issue of fact as to jury misconduct, the trial judge determines the issue and there is no abuse of discretion in [denying] the motion for new trial." *Thomas v. State*, 699 S.W.2d 845, 854 (Tex. Crim. App. 1985).

Here, Babin's counsel recounted the foreman's comments and concluded that the foreman impermissibly considered the CSA count when determining Babin's sentence.[5] But the State argues that Babin's counsel's interpretation of the foreman's statements was incorrect; the foreman's statements, as recounted by Babin's counsel, merely showed that the foreman justifiably believed a harsher sentence was needed because Babin refused to take responsibility, blaming everyone but himself for his

---

[5]Although we question whether Babin's counsel can testify to a juror's post-verdict statements regarding the jury's deliberations, *see* Tex. R. Evid. 606(b)(1), the State did not object to the admission of counsel's affidavit at the new-trial hearing. *See, e.g.*, *Orozco v. State*, No. 04-09-00456-CR, 2010 WL 3782198, at *6–7 (Tex. App.—San Antonio Sept. 29, 2010, no pet.) (mem. op., not designated for publication); *Wilson v. State*, No. 09-05-232 CR, 2006 WL 800777, at *1–2 (Tex. App.—Beaumont Mar. 29, 2006, no pet.) (mem. op., not designated for publication). Thus, the affidavit was before the trial court at the time the motion was deemed denied. *See* Tex. R. Evid. 103(a)(1).

18

actions in July 2017. This reasonable view of the foreman's statements could have supported the trial court's conclusion that Babin was not denied a fair punishment trial. *See, e.g.*, *King v. State*, No. 13-04-446-CR, 2005 WL 2470525, at *7–8 (Tex. App.—Corpus Christi–Edinburg Oct. 6, 2005, pet. ref'd) (mem. op., not designated for publication). Thus, we cannot conclude that the trial court abused its discretion. *See, e.g.*, *Sanchez v. State*, No. 13-08-00747-CR, 2010 WL 1407114, at *3 (Tex. App.— Corpus Christi–Edinburg Apr. 8, 2010, no pet.) (mem. op., not designated for publication); *King*, 2005 WL 2470525, at *7–8; *Gomez v. State*, 991 S.W.2d 870, 873 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (op. on reh'g). We overrule Babin's first issue.

## V. CONCLUSION

Babin failed to preserve any error arising from the alleged exclusion of Elaine's prior allegations of sexual abuse, occurring at daycare and at school. Regarding the daycare allegations, Babin failed to timely raise the same admission arguments in the trial court that he now asserts on appeal. And Babin did not submit evidence of the school incident in an offer of proof during the trial.

Further, even if the trial court erred by allowing Parada to testify as an outcry witness, the sexual-abuse details in her testimony were similar to the details Elaine, Angela, and Henley testified to without objection. Thus, Babin was not harmed by any arguable error in admitting Parada's testimony.

19

Finally, the trial court could have credited the facts recounted in Babin's counsel's affidavit and concluded that Babin was not denied a fair punishment trial. This reasonable view of the evidence supports the trial court's deemed denial and precludes this court from finding an abuse of discretion. Accordingly, we affirm the trial court's judgments. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: September 3, 2020